Chief Justice Bibb
delivered the Opinion of the Court.
Deeds of partition were reciprocally executed in July 1812, between Joseph M’Clintock, son of William, and Joseph M’Clintock, son of Joseph, of two lots of which they were joint owners in Millersburg. The complainant, Baker, holds by purchase of Joseph, son of William, by deed of April 1817, and he, by his bill, exhibits the. copy of *180 ibe deed executed by his vendor, Joseph, soil oí' William, to the other Joseph, claiming the benefit of a stipulation by the latter to the former, contained in that deed.
Deed of partition between the McClintocks.
ÁllCR-ationsof the disturbance, and obstruction in the common way, established by the deed of partition between the ground divided.
It recites that they were the owners of two inlots in the town, “known by their numbers, fifteen and fifty-six, whereon stood a house, and through said house there was an entry, which being near the middle of said lot, have made a line, running with said entry, across both lots, the dividing line, I Joseph M’Clintock, son of William M’Clintock, for and in consideration of Joseph M’Clintock, son of Joseph M’Cliniock, surrendering his claim, on .east end of said line, the receipt whereof I do hereby acknowledge, have surrendered unto Joseph M’Clintock, son of Joseph M’Clintock, Isis heirs and assigns, all that part of both lots, lying on the west side of said line, with all and singular advantages and appurtenances, &nd by these presents, hath surrendered unto the only use and behoof of him, the said Joseph M’Clintock, his heirs and assigns forever. As witness my hand and seal, the day and date before named; furthermore, the said Joseph M’Clintock, binds himself and his heirs, not to stop the said entry, but to 1st it remain open and free to both parties.
In August 1820, Baker brought his suit in equity against Talbott, who purchased of Joseph M’Clintock, son of Joseph, and against Hail, who purchased of Talbott, and against Joseph M’Clintock, son of Joseph, and by his bill, charges, that Talbott, or Hall, by his direction, under purchase from said Joseph M’Clintock, son of Joseph, “although apprised of your orator’s right to the common use of said passage in said house, and of the width thereof across said,lot, and that the same was reserved an& stipulated by said deed to he kept open for the common use of the several claimants, under the said two M’Clintocks, the parties to said deeds, have shut, and by building, obstructed the width of said passage in the direction, thereof across said lot, and either have stopped or threatened to stop up the passage of said house.”
Prayer of the bill lor the defendant to bo compelled to remove the obstructions in the passage, and enjoined from renewing them.
Answer.
Decree of the circuit court.
Claims of the parties slated.
Description of the ground, and points of controversy.
The prayer of the bill, is that the defendants be Compelled to remove the obstructions to the free and common use of said passage, “and the whole width thereof across said lot in its direction,” and for a perpetual injunction from obstructing the free use of said passage, and the width thereof in the same direction across the said lot.
The defendants admit a partition line was made, hut deny that a space of the width of the entry across the lots was to be kept open for common use: they assert that the house was situate on one of the streets, that it runs back but twenty feet; that the entry through the house only was to be kept open, but that the house and the ground was divided by a line corresponding with the'eastern wall of the entry. They deny any obstruction of the entry through the house.
The circuit court dismissed the hill.
The complainant claims the dividing line to be an alley of four feet wide, corresponding with the width and course of the entry. The defendant claims a surveyor’s line, a mathematical line without breadth, corresponding with the course of the eastern wall of the entry, and that the entry only was to be kept open. Both parties have resorted to parol proof. That proof establishes the line as claimed by the defendant. But the complainant now contends that the parol evidence contradicts the deed.
The house and entry remain, and the entry is four feet wide. The lots are bounded on three sides, by streets, the house fronts on main street, and runs back only twenty feet; the front of the house on main'street, is in length about half the extent of the lot, and the entry is about midway of .the extent of the lot on main street. The part which the complainant holds by the division, is bounded on three sides, by three i treets, so that there is no colour for saying that an alley was necessary or convenient for ingress or egress; but the entry of the house was convenient for the use of the apartments of the house, as divided between the parties. The entry is from main *182 street, at right angles to it, and in course, is paral - lei with fourth street, so that the alley claimed by would be from the house four feet wide, and one hundred and seventy-eight feet to back street. As the complainant claims the division, he will have fifty feet five inches front on main street, running back same width, along fourth street, .198 feet to back street, and binding on back street fifty feet, five inches; together with the common use of the alley of fouf feet from the house, 178 feet, to back street, thereby girdling his lots with the alley and the streets. The defendant will have only forty-five feet six inches on main street, running same width along the alley to back street, with the common use of the alley; As the defendant claims, he will have forty-nine feet, six inches, front, and the complainant, fifty feet, five inches, front, on main street, running back 188 feet each, and the common use of the entry through the house.
Linés called lormgrants, survey, and deeds, though dWct^and withoútan breadth, may bo explained tobo curved and to have ’ breadth.
The complainant contends that the true construction of the deed, requires the width of the entry across the lots, from main street to back street, so as in effect to open an alley.
The course of the dividing line is not dispuled; it is whether it shall be a line without breadth, or with breadth. Aline in surveying and dividing grounds means prima facie, a mathematical line, without breadth; yet this theoretic idea of a line may be explained, by the facts referred to, and connected with the division, to mean a wall, a ditch, a crooked fence, or a hedge, a line hating breadth, A course given from corner to corner, is, prima facie intended a right line; yet this may be explained, by reference to the acts of the surveyor and the marker, to be a curved line; even the courses expressed must yield and change, so as to he accomodated to the objects and abuttals referred to in the certificate of survey, grant or deed. The certificate of survey or grant, or deed founded on it, did not make the lines and corners, but intends to describe them as previously made. In explaining by oval testimony,-where and how the objects referred to in the written documents, were in fact made of *183 existed, those muniments of title are not altered by parol evidence. The effect and meaning is explained by the facts referred to in the writings. In cases of lines thus established variant from the courses and bearings expressed on the face of the written document, the parol evidence does not contradict the deed, but shows the act and thing by oral evidence of the fact in pais, to which the deed liad allusion, and was intended to describe.
Held, on the evidence and deed, that a mathematical lino, and ' not an alley, was the division between the parties.
So here the deed acknowledges and refers to a line of partition, agreed and made by the parties. That line is intended to be described; the act done preceded the deed; that act was referred to, and intended to be described by the deed. The description is imperfect and ambiguous, it docs not describe the line made by reference to the number of feet from the corners of the town lots, or by other unambiguous description, hut by reference to the house and entry through the house. Whether that line so made, commenced on the' east or the west side of the entry, or midway between, or was in fact a broad slip or alley across the Jots, is the question. They have described it as a line, not as an alley; the testimony proves it to have been a line not an alley. The proof docs not contradict, but conforms to the general description contained in the deed. The lines, as proved, is near the middle of the lot, and is with the course of the entry; it is nearer to the middle, than by taking it as an alley, and shows the propriety of the concluding and additional declaration in the deed, that the entry through the house should remain open and free to both parties. The dividing line having been made from the eastern wall of tho entry, the one party to the deed surrendering all on the northeast, and the other all on the northwest of the line, it would have followed that the owner of the northwestern division would have owned the whole of the entry through the house, and might have stopped it at his pleasure, but for the covenant, that it should remain “open and free to both parties.” Whereas had this alley of four feet in breadth been agreed upon, and the line alluded to, then the one surrendering all on one side, and the other, all on the otht *184 er side of the alley, the alley itself would have still remained common property, and neither entitled to the exclusive use, the covenant as to its remaining free and open to both, would have been useless.
Remarles on the smallness of the case.
The acts-of the parties to the division, their declarations, the division fence, the back building e-rccted by the vendor of the complainant, the possession of the parties from ISIS, and the award of April 1820, all comport with the divisional line as claimed by the defendants. The description and covenant in the deed, comports best with that line. The distinction between the entry and the dividing-line, is kepi up in the deed. The entry through the house is one object referred to, the line by which they had divided the house and two.lots of ground, is another. The distinction between a line and an. alley is obvious and familiar. If the parties had agreed to open an alley across the lots, and to keep it open, it was easy to have said so. They have not said so. They have stipulated that the entry shall remain open and free to both parties; they have said nothing about opening an alley to remain free and open to both parties.
Judge Blackstone mentions a suit about' an ox, in which the parties had incurred costs amounting to £1,000 —The ox was of the value of £5. — The costs in this case have not amounted to so much. But these parties have been contending for seven years about an alley through these lots in a country village. The whole' area of fifty feet on main and back streets; running with fourth street, one hundred and ninety-eight feet, with the part of the house as formerly divided, together with the buildings and improvements since made, was purchased by the complainant in 1817, for six hundred dollars. The addition he demands is the common use of the alley four feet wide, which if opened would be of no practical utility to the parites, considering the free use of the streets by which they are bounded, and not worth the additional expense of making and keeping in repair the double line of fencing. The play is not worth the torch by which the principal act os’s in the drama have been lighted to the catastrophe. It would have been better that the parties had amicably agreed to repair the dividing fence at *185 ¿heir mutual charge, so as to keep the children and servants of the one, from treading under foot the peas and cabbages of the other. It is an ill will that blows nobody any good. The lawyers, clerks and sheriffs must have their reward.
Talbott, for plaintiff; Depew, for defendants,
It seems to this court, that there is no evidence of any obstruction done or offered by the defendants to the rights of the complainant, as suggested by the bill, and that the dividing line is as asserted by the answer of the defendants.
It is therefore, ordered and decreed, that the decree of the circuit court be affirmed, with costs.